UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADAM A. LOCKE,

        Plaintiff,

        v.                                      Case No. 17-C-1636

DAVID BETH,
LT. KLINKHAMMER, and
CO BEDFORD,

        Defendants.

## DECISION AND ORDER

Plaintiff Adam A. Locke, who is currently serving a federal prison sentence at Leavenworth U.S. Penitentiary in Leavenworth, Kansas, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated while in custody at the Kenosha County Detention Center (KCDC). In particular, he asserts that, while he was incarcerated at KCDC from June 12, 2017, to January 23, 2018, Correctional Officer Bedford sexually harassed him and rubbed his erect penis on Locke's buttocks and grinded on him several times during a pat-down. He also alleges Sheriff Beth and Lieutenant Klinkhammer failed to intervene and protect him from Bedford's harassment. Presently before the court is the defendants' motion for summary judgment. For the following reasons, the motion will be granted and the case will be dismissed.

## PRELIMINARY MATTERS

Before turning to the substance of the parties' arguments, the court must address two preliminary matters. First, the defendants argue that their proposed findings of fact must be deemed admitted as uncontroverted for the purposes of summary judgment because Locke failed

to properly respond to them in accordance with Civil Local Rule 56. Pursuant to the local rules, along with the motion for summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed findings of fact is comprised of numbered paragraphs containing short factual statements and specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C). The defendants in this case submitted proposed findings of fact in support of their motion for summary judgment in compliance with the local rules. ECF No. 65.

The party opposing the motion must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii). The defendants, as required by this court's local rules, included a copy of Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 in their motion for summary judgment. Rather than respond to the defendants' proposed findings of fact, Locke

submitted his own proposed findings of fact, but failed to explicitly cite to evidence supporting his proposed findings, in violation of this court's local rules.

The Seventh Circuit has made clear that a "district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). In this case, Locke received proper notice detailing how to respond to the defendants' proposed findings of fact in compliance with this court's local rules. As a result, the court will deem the defendants' proposed findings of fact admitted for the purposes of summary judgment, as no proper response has been provided, and will not consider Locke's additional facts because they do not comply with the local rules. Civil L.R. 56(b)(4) (E.D. Wis.); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [the local rules], the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

Second, the defendants request that the court strike Locke's response brief for exceeding the page limits set forth in the local rules. Locke's response brief is forty-three pages long, which exceeds the thirty-page limit prescribed in the local rules. *See* Civil L.R. 56(b)(8)(A). Locke did not seek prior approval of the court for exceeding the page limit in his brief. Although the court will consider Locke's brief in its entirety in this case, the rule will be enforced as to future filings. With these considerations in mind, the court now turns to the instant motion.

**BACKGROUND**

At all times relevant to this case, Locke was incarcerated at KCDC from June 12, 2017, through January 23, 2018. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, ECF No. 65. His cell was located in the H-East housing unit. Locke asserts that Bedford sexually harassed him from July 2017 through January 2018 and conducted an inappropriate pat-search sometime between August and October 2017.

On January 2, 2018, Locke submitted a Prison Rape Elimination Act (PREA) grievance concerning the alleged verbal sexual harassment and improper search conducted by Bedford sometime between August 2017 and October 2017. *Id.* at ¶¶ 4–5. Corporal James Parker received the PREA grievance on January 3, 2018, and immediately investigated the allegations. *Id.* at ¶ 6. That same day, Parker interviewed Locke about his complaints and went through a PREA checklist with him. *Id.* at ¶ 8. During the interview, Parker asked Locke if he could narrow down the timeframe of the alleged pat-search incident. Locke indicated that the inappropriate pat-search occurred between August 2017 and October 2017 but could not be more specific. He reported that the pat-search took place as inmates returned from their evening meal while Bedford worked as a dorm officer in the H-South unit and occurred in the H-South vestibule, the small area between H-East, H-West, and the officer's station. Locke alleges that Bedford randomly picked him along with three other inmates to pat-search but has not identified those other inmates. Locke stated that, during the pat-search, Locke felt Bedford's erect penis go into his buttocks and felt Bedford grind against him. Although he could not identify any witnesses of the incident, Locke believed that the pat-down occurred within clear view of the security camera.

Locke also reported to Parker that Bedford sexually harassed him from early July 2017 through January 3, 2018. He claimed that Bedford made sexual comments about sex with women,

4

going to bars, pulling money from his pocket and showing it to inmates, and sexual gestures regarding women. Parker asked Locke if Bedford ever engaged in a sexual act, made sexual advances on him, displayed his genitals, or demanded that Locke touch him or expose himself. Locke denied that Bedford engaged in this conduct, with the exception of the pat-search.

Parker also asked Locke if he wanted to see a clinician or mental health counselor, and Locke expressed an interest in doing so. But when given the opportunity to see a mental health counselor on January 4, 2018, Locke refused to see the counselor because he did not feel comfortable speaking to a male counselor about the events.

After the interview, Parker used the detention center's scheduling program to obtain the exact dates that Bedford worked in H-South as a dorm officer between August and October 2017. These dates included August 16, 17, 18, 23, and 28; September 5, 7, 10, 18, 20, and 24; and October 6, 7, 9, 13, 15, 20, 22, 25, and 27. *Id.* at ¶ 22. Parker reviewed the security camera footage for each of these dates. The security camera does not capture sound. None of the footage showed Bedford conducting a pat-search of Locke or Bedford dancing in front of Locke's cell and flashing money. Parker concluded that Locke's PREA allegations were unfounded.

Bedford denies that he conducted an inappropriate pat-search of Locke. He has worked at the KCDC for approximately 17 years. As a result, he is familiar with many inmates who are repeatedly incarcerated or incarcerated for extended periods of time. Bedford maintains that he strives to build and maintain a good rapport with inmates and engages in conversations that may include "colorful" or "street" language to better relate to some inmates and create trust. He acknowledges that most of the comments he made containing "colorful" or "street" language occurred in the dining hall or in front of Locke's cell to a group of inmates, so Locke may have overheard the conversations. But Bedford never directed any of these conversations directly at

5

Locke; never discussed any specifics regarding his sexual exploits with other women, paying for sex, the size of his private parts, or his sexual desires with Locke; and never made sexual overtures or gestures toward Locke, including pulling out money, rubbing his private area, twirling his hips in a sexual manner, or winking in a sexual manner.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)).

"When the opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a video recording exists and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Id.* at 378–81. Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

**A. Failure to Protect**

Locke claims Beth and Klinkhammer failed to intervene and protect him from Bedford's harassment. Section 1983 does not provide a cause of action against an individual based upon their supervisory role over another person. *See Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Servs.*, 436 U.S. 657, 699 n.58 (1978); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1994)). A defendant will only be liable under § 1983 if the conduct causing the deprivation "occurs at his discretion or with his knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Hildebrandt v. Ill. Dep't. of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Gentry*, 65 F.3d at 561).

Although Locke claims Corporal Parker read or reviewed his PREA grievance and forwarded it along to an unknown officer, Locke offers no evidence that Beth or Klinkhammer were involved in investigating his claims. Absent any involvement by Beth and Klinkhammer,

they cannot be held liable under § 1983. Because Locke has failed to demonstrate that he has evidence of either involvement or knowledge on the part of these defendants, his claims against them will be dismissed.

**B. Sexual Harassment and Inappropriate Pat-Search**

Locke claims Bedford subjected him to sexual harassment and an inappropriate pat-search while he was at KCDC in violation of his constitutional rights. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Claims of sexual harassment or abuse by correctional officers may be the basis of an Eighth Amendment claim. *Wood v. Beauclair*, 692 F.3d 1041, 1046 (7th Cir. 2012). The test for "determining whether a prisoner has suffered cruel and unusual punishment has two components, one objective and one subjective." *Fillmore v. Page*, 358 F.3d 496, 509 (7th Cir. 2004). The plaintiff must establish the objective component by showing "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and the subjective element by showing "the officials act[ed] with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted).

As to Locke's claims of sexual harassment, allegations of verbal harassment generally do not rise to the level of an Eighth Amendment violation. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *see also Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (noting that "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment").

8

Locke claims Bedford made sexual comments about sex with women and going to bars, made sexual gestures regarding women, and pulled money from his pocket and showed it to inmates. Bedford concedes that he uses "colorful" or "street language" in conversations in the dining hall or in front of Locke's cell with a group of inmates to build a good rapport with them but never directed any of these conversations at Locke. Locke does not dispute that Bedford never engaged in a sexual act, made sexual advances on him, displayed his genitals, or demanded that Locke touch him or expose himself. Even accepting as true Locke's assertion that Bedford made such colorful comments, they do not amount to a constitutional violation. *See Calhoun*, 319 F.3d at 939 (noting that "not every psychological discomfort a prisoner endures amounts to a constitutional violation"). Accordingly, the defendants' motion for summary judgment will be granted with respect to Locke's sexual harassment claim.

Locke also claims Bedford conducted an inappropriate pat-search when Bedford was a dorm officer sometime between August and October 2017 during which Bedford rubbed his erect penis into Locke's buttocks and grinded on Locke several times. The Seventh Circuit has recognized that the "unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (citation omitted). While Bedford does not dispute that an inappropriate pat-search could amount to a constitutional violation, he asserts that summary judgment is appropriate here because Locke has failed to present evidence that a pat-down actually occurred.

During the PREA investigation, Locke claimed that the pat-search took place sometime between August and October 2017, when Bedford worked as a dorm officer in the H-South unit and as inmates returned from their evening meal. Based on Locke's report, Parker reviewed the

9

security video footage of the dates during which Bedford was a dorm officer. In support of their motion for summary judgment, the defendants have submitted camera footage of the twenty days during the period in question that Bedford worked second shift hours as a dorm officer and contend that this footage does not show Bedford pulling anyone out of line in the H-South vestibule or conducting a pat-search.

Locke concedes that this video footage establishes that the pat-search did not occur on one of these twenty days when Bedford was a dorm officer. He now claims for the first time in his response to the motion for summary judgment that the pat-search probably occurred when Bedford worked as a movement officer, rather than as a dorm officer. The defendants do not dispute that Bedford worked thirteen additional days during the relevant time period and that there were four days in which Bedford was tasked with escorting the H-East unit to and from the dining hall as a movement officer. The defendants assert, however, that KCDC only retained video footage of the dates during which Bedford worked as a dorm officer based on Locke's statements during the PREA investigation and that Bedford's assigned duties as a movement officer prevented him from conducting inmate pat-searches in any event.

Locke's belated changes in his allegations fail as a matter of law because he cannot change the factual premise of his claim at this late stage simply because the video disproves his case. The defendants cannot be expected to defend against a set of new facts that were never raised prior to Locke's submission of his response brief. Because Locke has not presented evidence that an inappropriate pat-search occurred when Bedford was a dorm officer during any time between August and October 2017, the defendants' motion for summary judgment will be granted. In any event, because Locke failed to properly respond to the defendants' proposed findings of fact, Officer Bedford's unequivocal statement that he never performed such a pat-down or conducted

any inappropriate search of Locke stands uncontroverted. For this reason alone, summary judgment in Bedford's favor is required.

## CONCLUSION

Based on the foregoing, the defendants' motion for summary judgment (ECF No. 59) is **GRANTED** and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 8th day of February, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court